UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WINMAR CONSTRUCTION, INC.,<br><br>Plaintiff,<br><br>v.<br><br>IRON KINGDOM, INC., *et al.*,<br><br>Defendants. | Civil Action No. 24-968 (JEB) |

## MEMORANDUM OPINION

Defendant Iron Kingdom, Inc. is in the business of fabricating steel for use in commercial construction projects. Along with its lawyer, Defendant Angela Richie, the company is accused in this suit of fabricating something else as well — namely, a pair of fraudulent mechanic's liens designed to extract money from Plaintiff Winmar Construction, Inc. After Iron Kingdom was terminated as a subcontractor on two of Winmar's projects, it recorded these liens to recoup the value of its improvements to the properties in question. Winmar, contending that Iron Kingdom is entitled to no payment under the subcontracts and that it in fact owes Winmar because it performed its work without proper licensure, views the liens as fraudulent instruments of extortion. Not content with a well-aimed proportionate suit, Plaintiff instead wheels out a howitzer, alleging that Defendant's actions violate the Racketeer Influenced and Corrupt Organizations Act and also give rise to various state-law claims based in contract. Defendants now move to dismiss the RICO causes of action. Without weighing in on Plaintiff's dubious strategic choice, the Court finds that Winmar lacks standing to assert a RICO claim. It will thus dismiss those counts and decline to exercise supplemental jurisdiction over the remaining state-law claims.

1

I.      **Background**

At this stage, the Court sets forth the facts as pled in the Amended Complaint and its exhibits, assuming them to be true. See Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).

In need of a subcontractor to perform structural steel work, prime contractor Winmar hired Iron Kingdom on two of its projects in 2022. See ECF No. 9 (Am. Compl. & Exhs.), ¶¶ 1, 3, 21–22. The first was the construction of a hotel here in Washington at 1337 Connecticut Avenue, N.W., which Plaintiff undertook on behalf of the hotel's owner, 1320 Penelope, LLC. Id., ¶ 1; id. at 137–43 (Hotel Lien). The second was to build an American Express lounge in the Ronald Reagan Airport (better known to Washington old-timers as National Airport) in Arlington, Virginia. That work was done pursuant to a prime contract with the property's leaseholder, AmEx. Id., ¶ 3; id. at 148–52 (AmEx Lien).

Despite hiring Iron Kingdom twice, Winmar did not end up finding the relationship an easy one. On the hotel project, Plaintiff alleges that for its money, it received "defective shop drawings, manpower deficiencies causing delays to the Project, and out-of-sequence work by other subcontractors on the Project." Id., ¶ 5. Iron Kingdom caused "many of the same problems" on the AmEx lounge project, in addition to having a habit of "submitting numerous improper and unsupported change orders, which were rejected." Id., ¶ 6. Things became so untenable on the hotel-construction front that Winmar ultimately terminated the subcontract. Id., ¶ 5. Plaintiff nevertheless paid Iron Kingdom all of the money that it received from each project's owner for the steel work. Id., ¶ 39.

Winmar had not heard the last from Iron Kingdom, however. In February 2024, the steel company — purportedly with Richie's assistance as counsel — recorded a mechanic's lien

on each property seeking to collect unpaid money for its labor and materials. Id., ¶¶ 7–9; Hotel Lien; AmEx Lien. For the hotel work, Defendants sought $448,402; for the lounge, approximately $113,662. See Hotel Lien; AmEx Lien. They sent notice of the liens to the project owners (whose property the liens attached to) and copied Plaintiff on the communication. See Hotel Lien; AmEx Lien.

The hotel lien states that Iron Kingdom "provided structural and misc. metals and related work" on the project "pursuant to its written subcontract . . . and the directions and instructions provided by" Winmar. See Hotel Lien. By signing the lien, Iron Kingdom's representative affirmed that "the contents of this notice are true and correct to the best of [his] information and belief, that [Iron Kingdom] has the right to recover the Amount Claimed." Id. In accordance with the document's instructions to include a copy of the recorder's "current license to do business issued by the D.C. Department of Consumer and Regulatory Affairs," Defendants attached a "General Service and Repair — Home Improvement Contractor" license. Id.

As for the AmEx lien, it states that Iron Kingdom "[f]abricate[d] and install[ed] steel beams, angles, sill angle, flat embed plates with studs, welded and bolted connections, and other necessary pieces" for the lounge. See AmEx Lien. Defendants also included a contractor license number; the document states that if no such number is provided, "the claimant certifies that such a valid license or certificate is not required by law for the work done." Id. By signing the lien, Iron Kingdom swore that AmEx "is justly indebted to claimant in the sum of §113,662.11 dollars, for the consideration stated in the foregoing memorandum, and that the same is payable as therein stated." Id.

Plaintiff identifies two falsehoods in Defendants' liens. To start, it says, Iron Kingdom was not in possession of the correct licenses to perform the work in question, meaning that it is

not entitled to recover anything for its work. Id., ¶¶ 25–28, 35, 41. In fact, Winmar claims, Iron Kingdom must repay the sum that it has already received from Plaintiff. Id., ¶¶ 102–03. In a similar vein, Plaintiff maintains that the terms of the subcontracts preclude further recovery by Iron Kingdom. Specifically, both subcontracts contain a "pay-if-paid" provision limiting Winmar's liability to Iron Kingdom to the amount the former received as payment from the projects' owners for the latter's work. Id., ¶¶ 37–40. As Plaintiff has remitted all the money it has received from each owner, it alleges, Iron Kingdom has no right to further payment from Winmar, thereby giving the lie to its liens. Id., ¶ 41.

According to Winmar, Defendants filed the false liens knowing that doing so "would effectively stop or severely interfere with the funding of both Projects unless Winmar paid Iron Kingdom the extortionate sums being sought." Id., ¶ 10. There are no allegations in the Amended Complaint expanding on what exactly did occur in the aftermath of Defendants' actions. The most Plaintiff says on the matter is that its "business and/or property interests have been injured" by Defendants' conduct, that it "has suffered and continues to suffer damage to its business and reputation," and that "Defendants are liable to Plaintiff in an amount in excess of $600,000." Id., ¶¶ 73, 75–76.

The lack of clarity regarding any harm notwithstanding, Winmar filed suit in April 2024. See ECF No. 1 (Compl.). It amended its Complaint a month later, keeping the same causes of action. See Am. Compl. Counts I and II allege RICO and RICO-conspiracy violations, respectively. Id., ¶¶ 55–94. Count III requests a declaratory judgment that Iron Kingdom has no right to recover from Winmar, that its liens are false and void, and that Winmar is entitled to a refund for all money already paid to Iron Kingdom. Id., ¶¶ 95–103. Count IV claims breach of contract. Id., ¶¶ 104–07. Winmar states that its basis for bringing this action in federal court

is federal-question jurisdiction pursuant to 28 U.S.C. § 1331, as well as supplemental jurisdiction under 28 U.S.C. § 1367.  Id., ¶¶ 15–16.  Defendants have now moved to dismiss Counts I and II.  See ECF No. 10 (MTD).

**II.     Legal Standard**

Rule 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted."  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations marks and citation omitted).  In weighing a motion to dismiss, a court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the court] may take judicial notice."  EEOC v. St. Francis Xavier Parochial School, 117 F.3d 621, 624 (D.C. Cir. 1997).  The court "must treat the complaint's factual allegations as true and must grant [the] plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citations omitted).  It need not accept as true, however, "a legal conclusion couched as a factual allegation" or an inference unsupported by the facts set forth in the complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

**III.    Analysis**

Defendants assert a congeries of defenses to Plaintiff's RICO claims, some of which are stronger than others.  Fortunately for Iron Kingdom and Richie, consideration of the present

Motion can begin and end with just one of them: standing.  The Court proceeds accordingly, beginning with whether Winmar has sufficiently alleged a concrete injury to invoke this Court's subject-matter jurisdiction.  Concluding that it has not, the Court then declines to exercise supplemental jurisdiction over what remains.

    A.  <u>Constitutional Standing</u>

To maintain standing, a plaintiff must meet three criteria.  She must show that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  <u>Spokeo, Inc. v. Robins</u>, 578 U.S. 330, 338 (2016).  The "injury in fact" must be both "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."  <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 180 (2000).  A "deficiency on any one of the three prongs suffices to defeat standing."  <u>US Ecology, Inc. v. U.S. Dep't of Interior</u>, 231 F.3d 20, 24 (D.C. Cir. 2000).

Somewhat conflating jurisdiction and the merits, Defendants principally argue that Winmar lacks standing because legal remedies are available to void the allegedly false liens, which makes its injuries inherently speculative.  <u>See</u> MTD at 30–31 (citing caselaw holding that "[a] RICO injury must be 'concrete' or 'tangible'") (citation omitted).  The Court is not tied to this framing of the matter, however, as it must assure itself of its jurisdiction over the case.  Indeed, Article III of the United States Constitution limits the jurisdiction of federal courts to resolving "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  A party's standing "is an essential and unchanging part of the case-or-controversy requirement of Article III."  <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 560 (1992).  Standing therefore represents a "predicate to any

exercise of [the court's] jurisdiction." Florida Audubon Soc'y v. Bentsen, 94 F.3d 658, 663 (D.C. Cir. 1996) (*en banc*).

Winmar most clearly falters by not pleading a concrete injury tied to its RICO causes of action — not because it could resort to other legal remedies, but because it simply has not alleged any injury whatsoever. To be fair, a concrete injury does undergird its declaratory-judgment and breach-of-contract claims — *i.e.*, Plaintiff's payment to Iron Kingdom was improper because the latter was not properly licensed to perform steel-installation work. See Am. Compl., ¶ 103. But that injury has nothing to do with Winmar's RICO claims: most plausibly, that Defendants committed mail fraud twice over by making false statements in the recorded liens. Because "a plaintiff must demonstrate standing for each claim he seeks to press," Winmar must establish some other injury that confers standing to bring its RICO allegations specifically. See DaimlerChrisler Corp. v. Cuno, 547 U.S. 332, 352 (2006).

The first candidate for making out a concrete injury flowing from the liens is harm to Plaintiff's property interest. This seems a promising lead, given that an outstanding mechanic's lien might reasonably be thought to reduce the value of the real property to which it is attached. But as Defendants repeatedly point out — and Plaintiff conspicuously ignores in its Opposition — the liens run against the property interests held by each project's owner, not against any of Winmar's as a mere contractor. See MTD at 8, 20, 26. That is enough to count out harm to property.

The next possibility is straightforward monetary loss from the liens' existence. This time, Plaintiff's problem is that allegations of pecuniary harm related to the liens are nowhere to be found in the Amended Complaint. To be sure, Winmar gestures at such harm when it claims that Defendants recorded their liens knowing that doing so "would effectively stop or severely

7

interfere with the funding of both Projects unless Winmar paid Iron Kingdom the extortionate sums being sought." Am. Compl., ¶ 10. Yet readers waiting for the narrative payoff on this foreshadowing are sure to be disappointed: Plaintiff never maintains in the Amended Complaint that funding for either project actually dried up. Instead, it falls back on entirely boilerplate recitations that the liens caused it to "suffer damage to its business," and that "Defendants are liable to Plaintiff in an amount in excess of $600,000." Id., ¶¶ 73, 75–76. These "conclusory statements[] do not suffice" to stave off a motion to dismiss. Iqbal, 556 U.S. at 678. Perhaps recognizing this gaping hole in its factual allegations, Plaintiff states in its Opposition that "because of the false lien filed by Defendants on the DC Hotel Project seeking $448,402.00, . . . $560,502.50 in funding is being withheld from Winmar on the DC Hotel Project." Opp. at 14. Because a plaintiff may not amend its complaint by including facts in an opposition to a motion to dismiss, however, this cannot save Winmar. See Durand v. Dist. of Columbia, 38 F. Supp. 3d 119, 129 (D.D.C. 2014).

  The final possibility is that Plaintiff has suffered reputational damage from the liens. See Am. Compl., ¶ 75 ("Plaintiff has suffered and continues to suffer damage to its business and reputation.") (emphasis added). The D.C. Circuit has recognized that reputational injury can provide a basis for standing. See McBryde v. Comm. to Rev. Cir. Council Conduct & Disability Ords. of Jud. Conf. of U.S., 264 F.3d 52, 57 (D.C. Cir. 2001). Such harm typically gives rise to a cognizable injury in one of two situations. The first is when the harm causes a "loss of clients or other business" — *i.e.*, economic injury. See Morgan Drexen, Inc. v. CFPB, 785 F.3d 684, 692–93 (D.C. Cir. 2015). The second situation involves an individual whose reputation is damaged as a result of public stigmatization. See Foretich v. United States, 351

F.3d 1198, 1214 (D.C. Cir. 2003). There, the reputational harm itself is a concrete and particularized injury.

Winmar's passing reference to its reputation falls short under this framework. "As [a] profit-based enterprise[], [Winmar] presumably" alleges "economic harm to [its] business[], rather than stigmatic harms." Statewide Bonding, Inc. v. U.S. Dep't of Homeland Sec., 2019 WL 689987, at *4 (D.D.C. Feb. 19, 2019). Yet there are no facts in the Amended Complaint that "substantiate or explain what economic effects the reputational harms are causing" Plaintiff. Id. No doubt, a prime contractor might stand to lose goodwill if its subcontractors go unpaid and file liens against project owners. But Winmar does not connect its purported reputational hit to any allegation that it has actually lost business, as required for standing. This last glimmer of hope thus blinks out. As Plaintiff has alleged no concrete injury, it has no standing to bring a RICO action based on Defendants' liens. Lacking subject-matter jurisdiction over such claims, the Court must dismiss them.

B. State-Law Claims

The Court will also decline to exercise supplemental jurisdiction over Winmar's state-law claims. Federal district courts are given supplemental (or "pendent") jurisdiction over state claims that "form part of the same case or controversy" as federal claims over which they have original jurisdiction. See 28 U.S.C. § 1367(a). By the same token, they "may decline to exercise supplemental jurisdiction over [such] claim[s] . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." Id. § 1367(c)(3). The decision of whether to exercise supplemental jurisdiction where a court has dismissed all federal claims is left to the court's discretion as "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); see also Shekoyan v. Sibley

Int'l, 409 F.3d 414, 423 (D.C. Cir. 2005). When deciding whether to exercise supplemental jurisdiction over state claims, federal courts should consider "judicial economy, convenience, fairness, and comity." Shekoyan, 409 F.3d at 424 (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)). When all federal claims are eliminated before trial, however, those factors "will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon, 484 U.S. at 350 n.7; see also Edmondson & Gallagher v. Alban Towers Tenants Ass'n, 48 F.3d 1260, 1267 (D.C. Cir. 1995) (finding the discretion set out in Carnegie-Mellon "unaffected by the subsequent enactment of 28 U.S.C. § 1367(d), in the Judicial Improvements Act of 1990").

These factors weigh against retention here. This case is still in its early stages, the Court is dismissing the federal claims against Defendants on jurisdictional grounds, and, as a result, it has developed no familiarity with the additional issues presented. Cf. Schuler v. PricewaterhouseCoopers, LLP, 595 F.3d 370, 378 (D.C. Cir. 2010) (holding that district court appropriately retained pendent jurisdiction over state claims where it had "invested time and resources" in the case). The state-law counts will thus be dismissed without prejudice, and Plaintiff is free to file in the appropriate state or local court if it so desires.

\*   \*   \*

Today's ruling follows from the fact that the Amended Complaint has not established a concrete injury sufficient to confer standing. To the extent that Plaintiff might seek to vacate the dismissal and attempt to amend its Complaint, however, the Court warns that it anticipates additional difficulties ahead for these rather unusual RICO causes of action. As Defendants note in their Motion, for instance, a RICO claim requires a pattern of racketeering activity — that is, of criminal conduct specifically designated as actionable by the RICO statute. See MTD

at 22–26; see also Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985) (setting out RICO elements); 18 U.S.C. § 1961(1) (defining "racketeering activity"). What is more, a RICO plaintiff must establish an injury to his "business or property," 18 U.S.C. § 1964(c), that bears a "direct relation" to the predicate acts of racketeering. Holmes v. Sec. Inv. Protection Corp., 503 U.S. 258, 268 (1992); see also Solomon v. Dechert LLP, 2023 WL 6065025, at *9–12 (D.D.C. Sept. 18, 2023) (dismissing RICO claim predicated on acts of wire fraud for lack of proximate cause). It would be prudent for Winmar to bear this in mind when determining which course to next pursue.

**IV.     Conclusion**

For the foregoing reasons, the Court will grant Defendants' Motions to Dismiss. A separate Order to that effect will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  July 9, 2024